**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SHERRIE VERNON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 07-1508 |
| | ) | |
| A&L MOTOR SALES, | ) | Judge Joy Flowers Conti |
| | ) | Magistrate Judge Cathy Bissoon |
| Defendant. | ) | |
| | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I.     RECOMMENDATION

It is respectfully recommended that Defendant's Motion for Summary Judgment

(Doc. 22) be granted, as discussed below.

### II.     REPORT

**BACKGROUND**

Plaintiff, Sherrie Vernon, has brought this gender discrimination action against her

former employer, A&L Motor Sales ("Defendant" or "A&L").  Specifically, Plaintiff alleges that

A&L discriminated against her on the basis of her gender in violation of Title VII and the

Pennsylvania Human Relations Act, 43 Pa. Cons. Stat. Ann. § 951, et seq. ("PHRA") when it

terminated her employment.  See generally Compl. (Doc. 1.)

A&L is a family-owned automobile dealership owned by Steve and Brian Lamfrom.  See

Def's Concise Statement of Material Facts Not In Dispute (Doc. 23) ("Def's Facts") at ¶ 1. A&L

has an accounting office, which is supervised by Kim Beter, A&L's Office Manager.  Id. at ¶ 4.

As the Office Manager, Ms. Beter is responsible for A&L's financial statements and other

accounting functions.  Id. at ¶ 4.  She reports directly to the Lamfroms.  Id. at ¶ 4.

In her position as Office Manager, Ms. Beter supervises all of the employees in the accounting office and has full authority to hire employees into the accounting office without the Lamfroms' approval.  Id. at ¶¶ 3-4.  Plaintiff began working for A&L as an Accounts Payable/Accounts Receivable Clerk ("AP/AR Clerk") on April 30, 2007, and was hired by Ms. Beter.  Id. at ¶¶ 2-3.  Plaintiff's job duties as an AP/AR Clerk included posting deposits, running checks, posting and balancing credit card batches, coding and posting vendor invoices, updating accounts receivable, writing receipts and making journal entries.  Id. at ¶ 10.

A&L also has a service, body shop and parts department.  Id. at ¶ 20.  This department is managed by Rich Brooks, A&L's After Sales Manager.  Id.  Among the employees in the service, body shop and parts department is Ron Koski, a Warranty Administrator.  Id.  As a Warranty Administrator, Mr. Koski is responsible for preparing customer repair orders for the service department and for submitting warranty claims to the vehicle manufacturer.  Id. Mr. Koski began working for A&L in or about August 2005 and was hired by Mr. Brooks.  Id.

In hiring an AP/AR Clerk, Ms. Beter sought an individual with previous accounting experience who would require little training.  Id. at ¶ 8.  During her interview for the AP/AR Clerk, Plaintiff represented that she had 16 years of experience and education in accounting.  Id. at ¶ 6.  As such, Plaintiff did not need to be trained in accounting generally.  Id. at ¶ 7.  Based on her represented experience, Plaintiff was hired at a rate of $12.00 per hour, a higher hourly rate than what A&L previously paid AP/AR clerks.  Id. at ¶ 8.

Despite Plaintiff's experience, in May 2007 – very shortly after she began working for A&L – Ms. Beter verbally counseled Plaintiff about her performance with regard to both accounts payable and accounts receivable.  Id. at ¶ 13; Pl's Response to Def's Concise Statement

of Material Facts Not In Dispute (Doc. 28) ("Pl's Response to Def's Facts") at ¶¶ 12-13

Plaintiff's performance, however, did not improve.  (Def's Facts at ¶ 14.)

On June 18, 2007, Ms. Beter learned of an incident involving Plaintiff during which

Plaintiff disclosed her wage to a co-worker, Mr. Koski.[1]  Id. at ¶ 19.  Ms. Beter then investigated

the incident, including having conversations with Plaintiff and Mr. Koski's supervisor,

Mr. Brooks.  Id. at ¶ 22; Pl's Facts at ¶ 56.  Plaintiff first denied that she disclosed her wage to a

co-worker, but when pressed by Ms. Beter, Plaintiff admitted that she had, in fact, disclosed her

wage to Mr. Koski.  (Def's Facts at ¶¶ 23, 28; Pl's Concise Statement of Material Facts

Precluding Summary Judgment (Doc. 27) ("Pl's Facts") at ¶ 57.)  Ms. Beter's investigation

revealed that Plaintiff disclosed her wage during a conversation with Mr. Brooks about an open

cashier position, during which Mr. Koski was present.  (Def's Facts at ¶¶ 22, 24-25; Pl's Facts at

¶ 60.)  It is undisputed that Mr. Koski was present during this conversation and that Mr. Koski

overheard Plaintiff disclose her wage to Mr. Brooks.  (Def's Facts at ¶¶ 25, 32-33.)

On June 18, 2007, based on her investigation, coupled with Plaintiff's job performance

not meeting her expectations, Ms. Beter decided to terminate Plaintiff's employment.  Id. at

¶¶ 26-27, 38.  Ms. Beter told Plaintiff that her employment was being terminated because she

had disclosed her wage to another employee.  Id. at ¶ 31.  Defendant later hired another female,

Amanda Fisher, to replace Plaintiff.  Id. at ¶ 62.

## ANALYSIS

Federal Rule of Civil Procedure 56(c) provides that summary judgment may be granted

if, drawing all inferences in favor of the non-moving party, "the pleadings, depositions, answers

---

[1]     Plaintiff disputes the facts concerning the manner in which Ms. Beter learned of Plaintiff's wage disclosure.
The manner in which Ms. Beter learned of the wage disclosure is irrelevant.  Regardless of how she learned
of it, the Court notes that Plaintiff does not dispute that Ms. Beter knew that she disclosed her wage and, in
fact, admits that Ms. Beter questioned her about the wage disclosure.  See Pl's Response to Def's Facts
at ¶ 19; Pl's Facts at ¶¶ 46, 56-57.

to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

Title VII makes it unlawful for an employer to discriminate against an individual with respect to "compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e, et seq.[2] The familiar McDonnell-Douglas burden-shifting framework applies where, as here, there is no direct evidence of gender discrimination.[3] Under the burden-shifting framework, Plaintiff must first establish a prima facie case of gender discrimination. To do so, Plaintiff must establish that: (1) she is a member of a protected class; (2) she is qualified for the position in question; (3) she suffered an adverse employment action; and (4) circumstances exist that give rise to an inference of unlawful discrimination. See Jones v. Sch. Dist. of Phila., 198 F.3d 403, 411 (3d Cir. 1999); Pivirotto v. Innovative Systems, Inc., 191 F.3d 344, 357 (3d Cir. 1999) (noting that "[w]e have . . . held that a plaintiff could meet her prima facie burden by demonstrating generally that 'she . . . was fired from [a position] under circumstances that give rise to an inference of unlawful discrimination'") (quoting Waldron v. SL Indus., Inc., 56 F.3d 491, 494 (3d Cir. 1995)); see also Wooler v. Citizens Bank, 274 Fed. Appx. 177, 180 (3d Cir. 2008).

If Plaintiff establishes a prima facie case, the burden shifts to Defendant to articulate a legitimate, non-discriminatory reason for Plaintiff's termination. Once Defendant establishes this reason, Plaintiff must point to specific evidence of record from which a reasonable fact-finder either: (i) could disbelieve Defendant's articulated non-discriminatory business reasons

---

[2]     The PHRA generally is interpreted in accordance with its federal counterparts. See Kelly v. Drexel Univ., 943 F.3d 102, 104 (3d Cir. 1996). Accordingly, the Court's decision relative to Plaintiff's Title VII claim applies equally to Plaintiff's PHRA claim.

[3]     The parties have not briefed the issue of whether Plaintiff has direct evidence of discrimination. As such, the Court proceeds on the assumption that no such evidence exists.

for the termination of Plaintiff's employment; or (ii) could believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employment action.  See Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994).

In its Motion, Defendant contends that it is entitled to summary judgment because Plaintiff cannot establish a prima facie case of gender discrimination because she cannot identify any similarly-situated individuals who were terminated or any other circumstances giving rise to an inference of discrimination.  Defendant further contends that Plaintiff cannot establish that the legitimate business reasons for which she was terminated were a pretext for discrimination.  The Court concludes that Plaintiff can neither establish her prima facie case nor demonstrate that Defendant's reasons for terminating her employment were pretextual.

### A.       **Plaintiff's *Prima Facie* Case**

Defendant does not dispute Plaintiff's ability to establish the first three elements of her prima facie case.  Rather, Defendant asserts that Plaintiff cannot establish the fourth and final element, i.e., that circumstances exist giving rise to an inference of discrimination.  Defendant primarily argues that Plaintiff cannot identify any similarly-situated individuals outside of the protected class who engaged in the same conduct and were treated more favorably.  The Court agrees.

In her response to Defendant's Motion, Plaintiff identifies only Mr. Koski as a comparator, and argues that Mr. Koski also revealed his wage and was not terminated.  (Pl's Brief in Opposition to Def's Motion for Summary Judgment (Doc. 29) ("Pl's Opp.") at 6.)  The record establishes, however, that Mr. Koski is not similarly-situated.

Contrary to her assertion, the record evidence demonstrates that Defendant terminated Plaintiff for disclosing her wage to Mr. Koski, a *co-worker*, not to Mr. Brooks, a supervisor. (Def's Facts at ¶¶ 31-33.)  Mr. Koski, on the other hand, discussed his wage with his supervisor,

Mr. Brooks, or with the owner, Steve Lamfrom. (Pl. Opp. at 7.) Plaintiff has offered no evidence to show that Mr. Koski disclosed his wage to a *co-worker*.

Moreover, Mr. Koski worked in a different department and had a different supervisor than Plaintiff, which further illustrates that Mr. Koski is not similarly-situated to Plaintiff. Ogden v. Keystone Residence, 226 F. Supp. 2d 588, 603 (M.D. Pa. 2002) (noting that similarly situated employees are those who "have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it"). Specifically, Plaintiff worked in the accounting department and was supervised by Ms. Beter, while Mr. Koski worked in the service department and was supervised by Mr. Brooks. There is no evidence that Ms. Beter was involved in any decisions relative to Mr. Koski's employment; likewise, there is no evidence that Mr. Brooks, Mr. Koski's supervisor, was involved in the decision to terminate Plaintiff. There also is no evidence that Ms. Beter and Mr. Brooks applied the same standards in their respective departments.

Plaintiff also asserts that "the circumstances of [her] discharge give rise to an inference of discrimination" insofar as her supervisor, Kim Beter, told her that she had to terminate her employment because Mr. Koski complained that Plaintiff made more money than him. (Pl's Opp. at 4-6.) As discussed infra in more detail, Ms. Beter's alleged statement to Plaintiff concerning Mr. Koski's complaint is insufficiently probative of gender discrimination. The fact that Ms. Beter may have conveyed to Plaintiff that Mr. Koski complained that a woman made more than he did, at best, may suggest that Mr. Koski harbored gender bias, but it falls short of demonstrating that the circumstances surrounding Plaintiff's termination (in which Mr. Koski indisputably had no decision-making role) "give rise to an inference of discrimination." Indeed,

that Plaintiff was hired by a woman, fired by a woman[4] and replaced by a woman belies the notion that the circumstances surrounding her termination were discriminatory. Although the Court is mindful that Plaintiff's burden is not a heavy one at this stage, the Court concludes that Plaintiff's proffer of evidence is insufficient to establish a <u>prima facie</u> case of gender discrimination. While the Court's analysis could end here, the Court also will address Plaintiff's proffer of evidence of pretext.

**B.** **Defendant's Legitimate Business Reasons and Plaintiff's Evidence Of Pretext**

Even assuming, for purposes of summary judgment, that Plaintiff could establish a <u>prima facie</u> case of discrimination, the burden of production shifts to Defendant to articulate a legitimate, non-discriminatory business reason for its decision to terminate Plaintiff's employment. Defendant asserts that it terminated Plaintiff because she improperly disclosed her wage and because she was not performing to expectations. Plaintiff has not challenged whether Defendant has satisfied its burden at this stage. Accordingly, the Court concludes that Defendant has met its burden of setting forth legitimate, non-discriminatory business reasons.

To discredit Defendant's legitimate, non-discriminatory reasons and demonstrate pretext, Plaintiff must proffer evidence that would allow a fact-finder to either (i) disbelieve the reasons or (ii) believe that discriminatory animus motivated the termination decision. <u>See</u> <u>Fuentes</u>, 32 F.3d at 764. Plaintiff asserts that she can proffer evidence to satisfy both of these prongs, or categories of evidence, as set forth in <u>Fuentes</u>. The Court disagrees.

---

[4]     The Court is mindful that Plaintiff has argued that Steve Lamfrom directed that Plaintiff be terminated. While this assertion is disputed, it remains undisputed that Ms. Beter did not perceive that she was being directed to terminate Plaintiff and, in fact, initiated an investigation of the wage disclosure issue, thereby undermining the notion that Ms. Beter simply was directed to fire Plaintiff. It also remains undisputed that Ms. Beter decided, following her investigation, that Plaintiff should be terminated. (Def's Facts at ¶¶ 22-23, 25-28.)

### *1.*      *Evidence of Discriminatory Animus Motivating Plaintiff's Termination*

Plaintiff first asserts that her gender "was a motivating factor in her discharge because of Beter's comment that she had to fire [her] because Koski complained a woman made more than him." (Pl's Opp. at 7.) Plaintiff reasons that "[f]iring a woman because she makes more money than a man" is evidence of discrimination. Id. at 5.[5]

"To show that discrimination was more likely than not a cause for the employer's action, the plaintiff must point to evidence with sufficient probative force that a fact-finder could conclude by a preponderance of the evidence that [gender] was a motivating or determinative factor in the employment decision." Simpson v. Kay Jewelers, 142 F.3d 639, 644-45 (3d Cir. 1998). Viewing the record evidence in the light most favorable to Plaintiff, the Court finds that the evidence that Plaintiff offers is not sufficiently probative.

The Court initially observes that Plaintiff overstates the record by stating that Ms. Beter told her that she had to fire her **because** of Mr. Koski's alleged gender-based complaint that "a woman made more than he did." A review of Plaintiff's deposition testimony reveals that the conversation between Plaintiff and Ms. Beter merely involved Ms. Beter relaying to Plaintiff a conversation she had with Steve Lamfrom during which Mr. Lamfrom relayed to Ms. Beter that Mr. Koski had complained about his salary purportedly on the basis that he was making less than a woman. Plaintiff has taken the imparting of Mr. Koski's allegedly biased complaint from

---

[5]      Critical to Plaintiff's claim is her allegation that Mr. Koski complained to Mr. Lamfrom about Plaintiff making more money than him. The Court notes that both Mr. Lamfrom and Mr. Koski deny that such a complaint ever occurred. Mr. Koski flatly denies that he was upset or that he complained. See Pl's Appendix, Ex. 4 (Doc. 30) at 18-20. Mr. Lamfrom testified that he could not recall whether Mr. Koski told him about Plaintiff's wage disclosure or even whether Mr. Koski complained about the fact that he earned less than Plaintiff. Pl's Appendix, Ex. 6 (Doc. 30) at 15-16. In addition, Mr. Lamfrom testified that Mr. Koski, at some point, told him that he had not had a raise in a long time, despite the length of time that he had been working for A&L. Id. at 17. As such, there exists a dispute as to whether Mr. Koski complained and, if he did, to whom he complained. For purposes of Defendant's Motion, the Court will accept as true Plaintiff's premise that Mr. Koski complained about earning less than Plaintiff and, further, that he made this complaint to Mr. Lamfrom. Even assuming these facts as true, as discussed infra, Plaintiff cannot satisfy her burden of demonstrating that discriminatory animus motivated the decision to terminate her employment.

Mr. Lamfrom to Ms. Beter and, finally, to Plaintiff to assert that Ms. Beter told Plaintiff that she was being terminated **<u>because</u>** of Mr. Koski's allegedly biased complaint. From this, Plaintiff seeks an inference that she was terminated because of her gender. Nothing in the record, however, supports such an inference.

Although Plaintiff cites her own testimony in support of her theory, that testimony fails to provide, or even suggest, that the motivation behind Plaintiff's termination was Mr. Koski's alleged gender-based complaint or Plaintiff's gender. Moreover, although Plaintiff asserts that Defendant "subsequently ratified Koski's statement and used it as a justification to fire" her, she fails to cite any record evidence to show (or to suggest) that Ms. Beter or anyone in management ratified Mr. Koski's statement or used it to justify her termination.

Although all inferences must be drawn in Plaintiff's favor as the non-moving party, the inferences that are drawn must be *reasonable*. Here, the inferences that Plaintiff seeks to have drawn in her favor (which inferences are based on the mere fact that Mr. Lamfrom conveyed Mr. Koski's complaint to Ms. Beter who then conveyed it to Plaintiff) simply are not reasonable. To reach the ultimate conclusion Plaintiff has drawn, <u>i.e.</u>, that her gender was more likely than not the reason she was terminated from her employment, the Court must infer (or assume) that Mr. Lamfrom and/or Ms. Beter agreed with Mr. Koski's purported complaint that a woman should not be making more than a man and, therefore, decided that this warranted the termination of Plaintiff's employment. The Court finds that these inferences are far too attenuated given the record evidence. That the inferences are too attenuated is only reinforced by the undisputed evidence that Plaintiff (i) earned more than a male co-worker in the first instance,

(ii) was hired by a woman, (iii) was fired by a woman,[6] and (iv) was replaced by a woman. These facts undercut the notion that gender was a motivating factor, or that gender was more likely than not the reason, underlying Plaintiff's termination.[7]

Ultimately, Plaintiff's argument is premised on her speculation that discriminatory animus must have motivated the decision. (Pl's Opp. at 6 n.4.) It is well-established, however, that Plaintiff's own unsubstantiated beliefs, without more, cannot demonstrate pretext. See Jones v. School Dist. of Philadelphia, 198 F.3d 403, 413-14 (3d Cir. 1999) (affirming grant of summary judgment and noting that plaintiff's allegations of discrimination were "predicate[d] on nothing more than his beliefs without having actual knowledge of them. In fact, a careful analysis of the record demonstrates that many of his allegations simply are not supported."). For all of these reasons, the Court concludes that Plaintiff has not offered sufficiently probative evidence to establish that a jury reasonably could find by a preponderance of that evidence that discriminatory animus motivated Defendant's decision to terminate Plaintiff's employment.

## 2. *Evidence Related To Discrediting Defendant's Reasons*

Plaintiff additionally argues that she can proffer evidence that would allow a jury to disbelieve, or cast doubt on, Defendant's reasons for terminating her employment. To demonstrate pretext in this manner, plaintiff "must point to evidence that proves . . . discrimination . . . based solely on the natural probative force of the evidence." Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101 (3d Cir. 1997). That evidence "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's

---

[6]      Again, the Court notes that the parties dispute whether Mr. Lamfrom or Ms. Beter was the ultimate decision-maker. As discussed infra, a review of the record demonstrates that it cannot be disputed that Ms. Beter was involved in the decision to terminate Plaintiff.

[7]      Mr. Koski's complaint (and Mr. Lamfrom and Ms. Beter's repetition of that complaint) perhaps could be categorized as a stray remark. But, "stray remarks by non-decisionmakers or by decisionmakers unrelated to the decision process are rarely given great weight . . . ." Ezold v. Wolf, Block, Schorr and Solis-Cohen, 983 F.2d 509, 545 (3d Cir. 1993).

proffered legitimate reasons for its actions that a reasonable fact finder could rationally find them unworthy of credence." Id. at 1108-09.  After a thorough review of the record, the Court finds that none of Plaintiff's evidence – taken individually or collectively – is sufficient to cast reasonable doubt on Defendant's reasons.

Shifting or Changing Reasons

Plaintiff argues that "Defendant continuously changed its reasons for firing" her purportedly as demonstrated by the fact that, at the time of her termination, Defendant only identified wage disclosure as the reason for her termination and then later added poor performance as an additional reason.  (Pl's Opp. at 8-15.)  Specifically, Plaintiff asserts that in paperwork opposing her unemployment compensation benefits claim, Defendant for the first time stated that Plaintiff overstated her qualifications.  Id. at 8.  She further asserts that at the time of her unemployment compensation hearing, Defendant further added (purportedly for the first time) that Plaintiff's work performance was poor.  Id.  The Court disagrees that this demonstrates that Defendant continuously changed its reasons for terminating her employment.

Plaintiff focuses on the fact that, at her termination meeting and in the termination paperwork, she was only told that the wage disclosure was the reason for her termination.  The record evidence, however, illustrates that Plaintiff was aware that Ms. Beter was not satisfied with her performance insofar as she admits that she was verbally counseled about her performance on, at least, one occasion during her short employment.  See Def's Facts at ¶ 13 ("[Plaintiff] admits that Beter verbally counseled her about her performance with regard to both accounts payable and accounts receivable.").[8]  Thus, the fact that Ms. Beter did not specifically

---

[8]     Plaintiff disputes the number of times that she was verbally counseled about her performance.  This dispute is immaterial for purposes of resolving Defendant's Motion because, at a minimum, Plaintiff acknowledges having discussed her performance with Ms. Beter on one occasion.  The Court also observes that Plaintiff worked for Defendant for less than two months, a relatively short period of time.  Thus, even if it is true

mention to Plaintiff, or identify on the Exit Questionnaire, that her performance was an additional basis for her termination is inconsequential. That Defendant had an additional reason for her termination and voiced that additional reason in the context of Plaintiff's unemployment compensation proceedings is not the kind of "shifting" reasons scenario that suggests that an employer's reason ought not to be believed.[9] See Simpson, 142 F.3d at 649 n. 15 (stating that a subsequent raising of an explanation is not necessarily evidence of pretext, noting that "'[t]he mere fact a defendant relies on a *post hoc* [explanation] does not in and of itself create a factual dispute about whether the [explanation was] pretextual.' The plaintiff must point to evidence that demonstrates there is reason to disbelieve the explanation.") (alterations in original) (quoting Healy v. New York Life Ins. Co., 860 F.2d 1209, 1215 (3d Cir. 1988)).

Stated differently, contrary to Plaintiff's suggestion, this is not a case where Defendant first identified one basis for the termination and later abandoned, changed, or exchanged that reason for an unrelated or inconsistent reason. See Bernhard v. Nexstar Broadcasting Group, Inc., 146 Fed. Appx. 582, 584-86 (3d Cir. 2005) (affirming summary judgment and rejecting plaintiff's argument that employer had raised a new reason for the first time at summary judgment, reasoning that employer did not "change the reason for terminating [plaintiff] from the reason previously articulated. Instead, it merely present[ed] high salary as an additional reason for the decision. We do not agree that a reasonable jury could view this assertion as 'a shift in

---

that Plaintiff was counseled only one time, the circumstances are not such that Plaintiff would have been blind-sided by Defendant's decision, as Plaintiff suggests was the case.

[9] Plaintiff also suggests that overstating qualifications and unsatisfactory performance are distinct reasons that Defendant offered at different times and that this too demonstrates that Defendant's reasons shifted over time. The Court disagrees that these reasons are inconsistent. Indeed, the record shows that Defendant's perception that Plaintiff's performance was unsatisfactory was related to Plaintiff's stated experience. That is, Defendant believed that Plaintiff ought to have performed better in light of her stated experience. As such, the reasons are not different and the fact that Defendant may have phrased the deficiency in terms of her qualifications or her performance does not demonstrate that Defendant's reasons were inconsistent. Hicks v. Tech Indus., 512 F. Supp. 2d 338, 350-52 (W.D. Pa. 2007) (Ambrose, C.J.) (finding that the purportedly inconsistent reasons cited by plaintiff "relate to the same issue" and that it is not inconsistent for the employer to use interchangeable terminology).

the defendants' position . . .'") (citation to quoted source omitted).  To this end, the Court

observes that Defendant consistently has maintained that Plaintiff's wage disclosure was a reason

for Plaintiff's termination.  There simply is insufficient evidence to show that Defendant shifted

or altered its reasons for terminating Plaintiff.

<u>Evidence Contradicting Defendant's Reasons</u>

Another key argument Plaintiff advances on pretext is the notion that there is evidence

"contradicting the core facts put forward by Defendant as the reason for its decision."  (Pl's Opp.

at 10.)  Plaintiff asserts that (i) Defendant did not have a policy against wage disclosure;

(ii) Plaintiff did not overstate her qualifications; and (iii) Defendant, in fact, did not fire Plaintiff

because of her performance.  <u>Id.</u> at 10-13.  At the outset, the Court observes that Plaintiff does

not dispute the material facts underlying Defendant's reason for terminating her:  that she

disclosed her wage in the presence of a co-worker who overheard it and that she was verbally

counseled about her performance.  Plaintiff instead attempts to question the correctness of

Defendant's perceptions.

Plaintiff argues that Defendant did not actually have a policy against wage disclosure and

that, to the extent there was one, it was not enforced and the source Defendant identifies for the

policy has changed from "common sense" to the Privacy Act section of the Employee

Handbook.  (Pl's Opp. at 10-11.)  Although Plaintiff's argument concerning the source of the

policy is not entirely without merit, the Court concludes that Defendant's reliance on the Privacy

Act as the source, however curious, is insufficient to cast doubt on Plaintiff's improper wage

disclosure as the reason for her termination.  In this regard, the Court notes that Ms. Beter has

maintained that the policy against disclosing wages is a matter of common sense and Plaintiff

has agreed that wage disclosure can be problematic.  (Def's Facts at ¶¶ 34, 36.)

Even assuming that the Privacy Act is not the applicable policy and that there was no other written policy against wage disclosure, common sense dictates that Plaintiff's conduct in disclosing her wage in the presence of a coworker was improper because knowledge of one another's wages can lead to problems among employees. Indeed, Plaintiff admits that she understood that disclosing her wages to another employees can create a problem in the work place because, as she testified, "if somebody is making more money than another person, it could cause a conflict between those two people. Or even the fact that the one feels they should be making more money." (Def's Facts at ¶ 36.) In fact, it is apparent that the genesis of this case was this very situation: Assuming Plaintiff's facts as true, Mr. Koski learned of Plaintiff's wage and purportedly was unhappy that she earned more than him. Plaintiff offers no authority for the notion that there must be some concrete written source for the policy before terminating an employee for violating that policy. Indeed, the existence of such authority would suggest that an employer could not terminate an at-will employee for improper conduct if no written policy existed prohibiting the conduct at issue.[10]

As to Plaintiff's protestations that she did not overstate her qualifications and that Defendant did not fire her because of her performance, these assertions are nothing more than attempts to demonstrate that, in her opinion, Defendant's decision to terminate her was wrong. It is well-established, however, that this Court cannot second-guess an employer's business decision and that the critical inquiry is "whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." <u>Fuentes</u>, 32 F.3d at 765 (citing <u>Ezold</u>, 983 F.2d at 523); <u>see also</u> <u>Jackson v. Bob Evans-Columbus</u>, No. 04-cv-559, 2006 WL 3814099, at *8 (W.D. Pa. Dec. 22, 2006) (Cercone, J.) (stating that court cannot "act as a

---

[10]    Plaintiff asserts that a policy against wage disclosure would violate the National Labor Relations Act ("NLRA"). (Pl's Opp. at 10.) There is no evidence that Plaintiff's conduct at issue here arose in any context protected by the NLRA. Accordingly, this argument lacks merit and will not be addressed.

super-personnel department over an employer's business judgment"). The Court concludes that Plaintiff's arguments concerning the correctness of Defendant's decision are insufficient to demonstrate pretext.

Plaintiff's Other Evidence of Pretext

None of Plaintiff's remaining evidence of pretext is sufficient to demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in Defendant's reasons such that a jury "could rationally find them unworthy of credence." For example, Plaintiff asserts that Defendant "hides its decision-maker," essentially arguing that Steve Lamfrom was the actual decision-maker, not Ms. Beter. (Pl's Opp. at 15-16.) Specifically, Plaintiff asserts that Mr. Lamfrom –an owner of A&L – directed Ms. Beter to terminate Plaintiff by telling Ms. Beter to "get her [i.e., Plaintiff] out of here." Id.

To be sure, the parties dispute whether, or the degree to which, Mr. Lamfrom was involved in the termination decision. But even assuming that Mr. Lamfrom influenced or was otherwise involved in the decision to terminate Plaintiff by telling Ms. Beter to "get her out of here," Plaintiff has not proffered evidence to demonstrate that Mr. Lamfrom's directive to Ms. Beter to fire Plaintiff was based on Plaintiff's gender. Indeed, Mr. Lamfrom's purported directive to Ms. Beter to "get her out of here" is, on its face, gender-neutral. Ultimately, the inquiry before the Court is whether sufficient evidence exists for a jury to reasonably conclude that discrimination was the real reason for the action. As discussed above, although all reasonable inferences should be drawn in Plaintiff's favor, the inference that Mr. Lamfrom's decision was based on Plaintiff's gender is not supported by the record evidence.

Even if Mr. Lamfrom, by virtue of his position as an owner of A&L, influenced the decision, the undisputed record evidence demonstrates (and Plaintiff essentially acknowledges)

that Ms. Beter was integrally involved in the decision to terminate Plaintiff. (See Pl's Opp. at 16.) It cannot be disputed that Ms. Beter, upon purportedly being told by Mr. Lamfrom to "get [Plaintiff] out of here," began her own investigation to determine whether Plaintiff, in fact, had disclosed her wage. (Def's Facts at ¶¶ 22-23, 25-28.) Ms. Beter's unrebutted testimony shows that her investigation involved conversations with Plaintiff and with Mr. Brooks and culminated in Plaintiff ultimately admitting to her that she disclosed her wage to Mr. Koski. Id. at ¶¶ 23-25, 28. It further cannot be disputed that Ms. Beter conducted the termination meeting during which she told Plaintiff that her employment was terminated and also completed the termination paperwork. Id. at ¶¶ 27-28, 30-31, 39. Thus, viewing the facts in the light most favorable to Plaintiff, at best, there were two decision-makers – one male and one female. The fact that one of the decision-makers is in the same protected class as Plaintiff undercuts any inference of discrimination. See Sherrod v. Booker T. Washington Ctr., No. 04-208, 2006 WL 2707317, at *8 (W.D. Pa. Sept. 19, 2006) (McLaughlin, J.) (granting summary judgment for employer on a race discrimination claim and noting that several of the decision-makers were the same race as plaintiff which "belie[s] any inference that may be drawn from Plaintiff's allegations that his race was the motivating factor that led to his termination"); see also Dungee v. Northeast Foods, Inc., 940 F. Supp. 682, 688 n.3 (D.N.J. 1996) ("The fact that the final decision-maker and both interviewers are members of plaintiff's protected class . . . weakens any possible inference of discrimination.").

Plaintiff next claims that "Defendant's workplace culture is evidence of sex discrimination." (Pl's Opp. at 16-18.) Although Plaintiff levels this allegation, she has not proffered any evidence in support of it, other than her own speculation. For example, Plaintiff maintains that Defendant has "sex-segregated departments" as demonstrated by the fact that the

accounting department "has always consisted almost entirely of women, while the service department consists almost entirely of men." Id. at 16-17. Plaintiff offers no evidence as to the applicant pool for positions in either the accounting or service departments. See Dowling v. Citizens Bank, 295 Fed. Appx. 499, 503 (3d Cir. 2008) (finding that plaintiff's statistical evidence was insufficient, in part, because plaintiff's statistics did not address the pool of applicants). Plaintiff has not cited any evidence that discriminatory attitudes or actions led to such a composition.

Plaintiff also asserts that "two female employees have filed claims of sexual harassment against Defendant." (Pl's Opp. at 17.) Again, Plaintiff fails to substantiate this with any record evidence and, in fact, the Court notes that Plaintiff overstates the only testimony in this regard. Mr. Lamfrom's unrebutted testimony on this point is that he recalled one or two allegations of sexual harassment. (Pl's App., Ex. 6 (Doc. 30).) Other than this vague testimony concerning these allegations, Plaintiff has not provided the Court with any evidence about the substance of the allegations such that they may be compared to Plaintiff's claim or assessed for their relevance.

The only other evidence Plaintiff offers is that Mr. Lamfrom refers to the female employees who work in the accounting department as the "girls." While the Court acknowledges that the term "girls" may be disrespectful to some women, the use of this word certainly is not sufficient to demonstrate pretext. In sum, Plaintiff has not proffered sufficient evidence on which a reasonable juror could believe that Defendant's workplace culture is biased.

Plaintiff next asserts that "Defendant's decision to contest [her] unemployment compensation claim because she filed an EEOC charge" demonstrates pretext. (Pl's Opp. at 18.) The Court again finds that Plaintiff's argument falls flat and is not evidence of pretext. The mere

fact that Defendant chose to contest Plaintiff's claim for unemployment compensation does not demonstrate that Defendant's reasons for terminating Plaintiff are not worthy of credence. Under Plaintiff's theory, an employer could never contest a terminated employee's unemployment compensation claim (despite the fact that doing so is well within an employer's legal rights) for fear that such an action would demonstrate that its reasons for terminating that employee were pretextual. Although Plaintiff's evidence that Defendant contested her unemployment compensation benefits claim allegedly because she filed an EEOC charge may be used as a basis for a claim for retaliation under Title VII (which claim is not before the Court), it is insufficient to show that Defendant's reasons for terminating her employment – wage disclosure and performance – are not worthy of credence. Indeed, in this case, it is particularly insufficient to demonstrate pretext because the undisputed record evidence demonstrates that Defendant responded to Plaintiff's claim for unemployment compensation benefits **before** Plaintiff even filed her Charge of Discrimination with the Equal Employment Opportunity Commission. (See Def's Supp. App., Exs. 29-31 (Doc. 35).)[11]

Finally, Plaintiff raises as evidence of pretext her observation that Defendant "cannot get its own story straight" and cites allegedly conflicting testimony of Defendant's witnesses adduced during discovery. (Pl's Opp. at 20-21.) The conflicting testimony to which Plaintiff cites relates to the issue of whether Mr. Koski complained and how Ms. Beter learned of Mr. Koski's alleged complaint. In particular, Plaintiff notes that Ms. Beter testified that Mr. Lamfrom told her that Mr. Koski complained that Plaintiff made more money than him and told her to "get [Plaintiff] out of here." Id. at 20. Conversely, Mr. Lamfrom testified that Mr. Koski never complained to him, that he never told Ms. Beter that Mr. Koski complained, and

---

[11]     The Court additionally notes that the EEOC issued its Notice of Charge of Discrimination on July 12, 2007, over two weeks after the process of contesting Plaintiff's unemployment benefits claim had commenced. See Def's Supp. App., Ex. 31 (Doc. 35).

he never told Ms. Beter to fire Plaintiff.  Id.  Consistent with Mr. Lamfrom's testimony,

Mr. Koski testified that he never complained about Plaintiff's wages to anyone.  Id.

The testimony Plaintiff highlights certainly exposes some discrepancies between the

accounts of Ms. Beter and Mr. Lamfrom regarding the decision-making process.  Notably,

however, these discrepancies are not about the decision itself or the core facts underlying the

decision.  Therefore, these discrepancies do not undermine Defendant's legitimate non-

discriminatory reasons for Plaintiff's termination and, as such, are immaterial.  For example, it is

immaterial how Ms. Beter learned of Plaintiff's indiscretion in disclosing her wages; it is only

material that Ms. Beter, indeed, learned of this disclosure.  That Ms. Beter learned of the

disclosure is undisputed.  In fact, Plaintiff, in her Opposition on this very point, concedes that

"Beter somehow found out [she] disclosed her wages to Brooks in front of Koski."  (Pl's Opp. at

20.)[12]  It is likewise immaterial whether Mr. Lamfrom told Ms. Beter to fire Plaintiff.  At best,

this perhaps reveals an inconsistency as to who the decision-maker was here, but it does not cast

sufficient doubt on Defendant's **reason** (or even the facts giving rise to the reason) for

terminating Plaintiff.  As discussed supra, even assuming Mr. Lamfrom made (or influenced) the

decision to terminate Plaintiff, there is no evidence that Mr. Lamfrom was motivated by

Plaintiff's gender; indeed, his alleged statement to Ms. Beter to "get rid of her" is gender-neutral.

In sum, a careful review of the record reveals that Defendant's witnesses do not raise any dispute

as to the core facts underlying, or giving rise to, Plaintiff's termination, namely that Plaintiff

disclosed her wages to a co-worker.  No matter whose testimony a fact-finder may accept as

---

[12]     The Court observes that Defendant, in its Motion, appears to proceed on the presumption that Mr. Koski raised a complaint about his salary and, therefore, it is not evident that this is a genuine issue of material fact between the parties.  The Court additionally observes that a dispute over whether Mr. Koski complained reveals an inherent inconsistency with Plaintiff's discrimination claim.  It is inconsistent for Plaintiff to premise her claim of discrimination on the notion that a man complained that a woman made more than him, but then argue that he never complained.

more credible, neither Mr. Lamfrom's testimony nor Ms. Beter's testimony create a reasonable inference that Defendant's reasons for terminating Plaintiff are not to be believed or that Plaintiff was terminated for any reason other than her wage disclosure.

Based on the undisputed record evidence, and drawing all reasonable inferences in favor of Plaintiff, the Court concludes that Plaintiff has failed to demonstrate that Defendant's reasons are not to be believed. Plaintiff also has failed to proffer sufficiently probative evidence for a jury to believe that her gender was more likely than not a motivating or determinative cause of her termination. The Court, therefore, recommends that Defendant's Motion for Summary Judgment be granted and judgment be entered in favor of Defendant.

## CONCLUSION

Plaintiff has failed to establish a prima facie case of gender discrimination. Even assuming that she could establish a prima facie case, Plaintiff has failed to demonstrate that Defendant's legitimate, non-discriminatory reasons for terminating her employment were pretextual. Accordingly, it is respectfully recommended that the District Court enter summary judgment in favor of Defendant.

In accordance with the Magistrates Act, 20 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local Rules for Magistrates, objections to this Report and Recommendation are due by March 13, 2009. Responses to objections are due by March 25, 2009.

s/ Cathy Bissoon
Cathy Bissoon
U.S. Magistrate Judge

February 24, 2009

cc (via email):

Samuel J. Cordes, Esq.
John E. Black, Esq.
Erica L. Clarke, Esq.
Robert E. Dapper, Esq.